UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cr-20370-Gayles

UNITED STATES OF AMERICA

vs.

LEROY HERRING, III,

    Defendant.
                                            /

**UNITED STATES' RESPONSE IN OPPOSITION TO
MOTION TO DISMISS FOR VIOLATION OF DUE PROCESS**

The United States of America, by and through the undersigned Assistant United States Attorney, files this Response in Opposition to the Defendant's Motion to Dismiss for Violation of Due Process (DE 33) and its Supplement to Mr. Herring's Motion to Dismiss for Violation of Due Process (DE 34). While the Government concedes that the disclosure of the body-worn camera footage and the information regarding the photo lineup was untimely, the lateness of the disclosure has not and will not prejudice the Defendant. Given that the Government turned over the discovery a week before trial and agreed to stipulate to the relevant circumstances surrounding the photo lineup, the Defendant's preparation and presentation of his defense has not been unduly affected. Under these circumstances, in which the Defendant has not suffered any prejudice, the Court should deny the Defendant's motion.

**I.**     **Factual Background**

On May 13, 2021, City of Miami police executed a search warrant at 844 NW 70th Street, Apartment 7, Miami, Florida, 33150 (the "Apartment"), to search for evidence of drug trafficking. Law enforcement had learned from a confidential source that the Apartment was being used to sell

controlled substances. To investigate the matter, law enforcement arranged for a confidential informant ("CI") to purchase controlled substances from the Apartment. The first purchase occurred on April 28, 2021. The CI purchased $20 worth of marijuana using official city funds from an unidentified black male. A few days later, on May 4, 2021, the CI purchased an additional $20 worth of marijuana using official city funds from an unidentified black female. Based on this information, law enforcement applied for and obtained a warrant to search the Apartment.

Upon execution of the search warrant, on May 13, 2021, law enforcement located the Defendant, Leroy Herring, III, at the Apartment. In preparing for trial on this case, and as explained further below, the Government learned that there was a second individual inside the Apartment. The second individual, who arrived moments prior to the execution of the search warrant, left his car running, in the right of way, and was making what appeared to be a brief visit to the Apartment when the SWAT team arrived to execute the search warrant.

During the search of the Apartment, law enforcement located two firearms along with ammunition in the sole bedroom. One firearm, a Glock 23 bearing serial number MPE760, was located on a table in the bedroom in plain view. Next to the firearm was the Defendant's wallet, which contained the Defendant's driver's license and social security card. A second firearm, a Glock 42 bearing serial number AAYF093, was located next to the bed on top of a shoebox, also in plain view. A records check revealed that this firearm was stolen. Additionally, law enforcement located various documents in the bedroom. One of the documents appeared to be a printed email addressed to "Leroyherring91@gmail.com" that was dated July 10, 2017, and printed July 20, 2017. Among other items, law enforcement recovered handwritten documents that were also located in the bedroom. Law enforcement was able to identify latent prints from certain of these handwritten documents and compared and identified the prints to the standard

prints of the Defendant.  In the kitchen, law enforcement also located controlled substances and narcotics paraphernalia that was in plain view, including a plastic bag containing 14.2 grams of Eutylone, a Schedule I Controlled Substance, three digital scales, and multiple empty baggies, amongst other items.

On July 8, 2021, the Defendant was charged by Indictment.  The Indictment charged the Defendant with three counts:  Possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 1); possession with intent to distribute a detectable amount of Eutylone, a Schedule I Controlled Substance, in violation of 21 U.S.C. § 841(a) (Count 2); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(l)(A)(i) (Count 3).

Thereafter, based on the evidence of fraud that was recovered from the Apartment, on December 1, 2021, the Government filed a Superseding Indictment (DE 29) adding three additional counts:  Possession of fifteen or more access devices, in violation of 18 U.S.C. § 1029(a)(3) (Count 4), and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) (Counts 5-6).  On December 1, 2021, the Government announced ready for trial.  In preparation for trial, the undersigned learned new information, which was immediately conveyed to the Defendant.

First, the undersigned learned that after the execution of the search warrant and Mr. Herring's arrest, the AUSA who was initially assigned to the case asked the lead Detective Kandice Miller to present the CI with a picture of the Defendant to see if he could identify Mr. Herring. Detective Miller presented the CI with a lineup, which consisted of six individual pictures, one of them being the Defendant.  The CI reviewed the pictures and did not identify the Defendant as the

seller of drugs on either of the two buy/walks that were conducted. Detective Miller informed the AUSA of the results.

Post-indictment, on August 30, 2021, the AUSA produced the initial set of discovery (DE 12). The discovery contained the search warrant that was executed in May of 2021. The search warrant's affidavit detailed the circumstances of the two buy/walks, including that the CI had purchased drugs from the Apartment on two occasions from an unidentified black male and an unidentified black female, respectively. The Response to Standing Discovery Order also indicated that the Defendant had not been identified in a lineup or any other similar identification proceedings (DE 12). Regrettably, the AUSA did not disclose that the CI had been presented with a photo lineup that included a picture of the Defendant and had not identified the Defendant. The AUSA then went on maternity leave but inadvertently did not advise her successor about the lineup. The second AUSA on the matter produced a second set of discovery and, soon afterwards, went on paternity leave. The case was then reassigned to the undersigned who began preparing the case for trial.

In preparation for trial, the undersigned and her trial partner met with Detective Miller and learned that she had presented the CI with a lineup that included a picture of Mr. Herring and that the CI had not made any identifications. We then asked Detective Miller for a copy of the lineup, and she advised us that she did not keep it. When asked why not, she stated that this was the first paper lineup she conducted. She explained that she was asked to show the CI a picture of Mr. Herring, and when the CI did not identify Mr. Herring or anyone else, she did not think it was important to keep it because no positive identification had been made. On Thursday, December 2, 2021, the undersigned asked AFPD Krasnoff to step out of a hearing and advised her of the new

4

information. That conversation was followed-up by an email advising the Defendant of our learnings. *See* Exhibit A, Email to Defense Counsel, dated Dec. 2, 2021.

Second, while meeting with other officers, the undersigned also learned that although most of the officers listed on the Arrest Form were not wearing body cameras during the execution of the search warrant, the SWAT team did. The undersigned immediately requested that footage along with any reports that were generated by SWAT. We received the footage on Thursday, December 2, and provided copies to the Defendant that same day via FedEx. Importantly, that footage showed that in addition to Mr. Herring, there was a second person inside the Apartment when the search warrant was executed. Body-worn camera footage shows Mr. Herring and the second individual slowly walking out of the apartment with their hands in the air, in response to commands from the SWAT team. Detective Miller believed, albeit mistakenly, that there was only one person inside the Apartment and had documented the same in Mr. Herring's Arrest Form and other documents.

## II.     Legal Authority

"To show that the loss of evidence by the government constitutes a denial of due process, the defendant must show that the evidence was likely to significantly contribute to his defense." *California v. Trombetta*, 467 U.S. 479, 488 (1984). "To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* "[F]ailure to preserve this 'potentially useful evidence' does not violate the due process clause 'unless a criminal defendant can show bad faith on the part of the police.'" *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).

**III.     Analysis**

The Defendant argues that the Court should dismiss the indictment because "there is no way for Mr. Herring to recreate the line-up" or "show the jury whether the actual sellers were in the line-up" (DE 33 at 6). He further contends that because "Detective Miller made the decision to destroy the evidence of the line-up," the only proper remedy is to dismiss the case (DE 33 at 6). But as the Defendant's own cases explain, dismissal of an indictment is an extraordinary remedy that should be left only for the most egregious violations of intentional misconduct that cannot be remedied. That is not the case here. The Government did not act in bad faith and, although untimely, it disclosed the existence of the evidence a week prior to trial and agreed to stipulate to the facts underlying the two drug purchases that occurred at the Apartment prior to the execution of the search warrant. Because these steps cure any prejudice that could have resulted from the untimely disclosure of evidence, the Defendant's motion should be denied.

**A.     The Government's Stipulation Has Cured the Failure to Preserve the Lineup**

The failure to preserve the lineup presented to the CI has already been cured. The Government has agreed to stipulate to the fact that a CI purchased drugs during two separate buy walks and was shown a photo lineup that contained a picture of Mr. Herring but he did not make any identifications. The Defendant proffered the following stipulation to admit at trial:

> 1) On April 28, 2021, at the instruction of officers from the Miami Police Department, a confidential informant purchased drugs from a seller at 844 N.W. 70th Street, Apartment 7, Miami, Florida. The seller was an unidentified Black male.
>
> 2) On May 4, 2021, at the instruction of officers from the Miami Police Department, a confidential informant purchased drugs from a seller at 844 N.W. 70th Street, Apartment 7, Miami, Florida. The seller was an unidentified Black female.
>
> 3) After the purchases, law enforcement placed Mr. Herring in a six-pack photo line-up. The confidential informant did not identify Mr. Herring as the seller of the drugs on either date.
>
> 4) Law enforcement did not preserve any evidence of the line-up that was conducted.

*See* Government's Exhibit B, Stipulation Offered by the Defendant.

The Government agreed to stipulate to paragraphs 1-3 of the above, which amounts to comparable evidence that would have been obtained had the photo lineup been available for trial. While it does not physically replace the lineup conducted, it delivers the same message to the jury: other people, who are not the Defendant, were selling drugs out of the Apartment prior to execution of the search warrant. The Defendant argues that this is insufficient because he "will not be able to show the jury whether the other person in the apartment was in the line-up; or whether the actual sellers of the narcotics were in the line-up" (DE 36 at 6). But what the Defendant ignores is that even if the photo lineup was available for trial, he still would not been able to prove these facts.

To be sure, this is not a situation in which the CI positively identified the individuals from whom he purchased the marijuana. Indeed, the CI looked at a lineup and did not identify anyone. Accordingly, if the photo of the person who was in the Apartment along with the Defendant on the day of the search of the Apartment had been included in the lineup, all that could be established by the lineup is that that person (as well as the other individuals in the lineup, including the

Defendant) had *not* been identified as one of the persons who sold drugs to the CI from the Apartment.[1]  The Government has already agreed to stipulate to these facts.

The only fact that the Government has not agreed to is paragraph 4, which states that "Law enforcement did not preserve any evidence of the line-up that was conducted."  That is because paragraph 4 does not remedy the fact that the lineup was destroyed.  Instead, it only serves to cast aspersions onto the Government.  Simply put, at trial the Government will not dispute that other people sold drugs from the Apartment on prior dates or that the lineup established that the CI had not identified the Defendant (or anyone) as the person who sold drugs to him.  Thus, the Defendant will not be prejudiced in any way.

Even if there was no evidence available that is comparable to the photo lineup, which the Government maintains that there is, dismissal of the indictment would still be inappropriate because the Government did not act in bad faith.  While the Defendant claims that Detective Miller operated in bad faith in failing to preserve the lineup, they point to no facts to support that her conduct was malicious, and that is because there are no such facts.

In *Davis v. Sellers*, 940 F.3d 1175, 1188 (11th Cir. 2019), the Eleventh Circuit affirmed the district court's denial of habeas corpus relief that was based on the destruction of evidence.  In that case, which involved a homicide, the defendant moved to dismiss based on the loss or destruction of a gun, a bullet and its casing, a tassel from a hat, two gas cans, a plastic bag, a shotgun, a knife, a flashlight, a key, and telephone caller identification unit.  The Georgia Supreme Court held that those items were not suitable for testing because they had been damaged, and any

---

[1] It is important to note that, on August 30, 2021, the Government disclosed the affidavit in support of the search warrant, which made clear that someone other than the Defendant sold drugs from the Apartment—an unknown black female and an unknown black male.  Thus, from the inception of this case, the Defendant always had available the defense that the drugs found in the Apartment belonged to and were being sold by someone other than him.

testing that was done was preserved by trial witness testimony. The Court finally held that there was no evidence that anyone acted in bad faith. The Eleventh Circuit upheld the Georgia Supreme Court's ruling, finding that it was "entirely reasonable." *Id.* at 1188. *See also United States v. Gayle*, 608 Fed. App'x 783 (11th Cir. 2015) (failure to preserve video of post-arrest interview did not violate due process nor was it a *Brady* violation); *United States v. Garcia-Soler*, 775 Fed. App'x 523 (2019) (finding that the destruction of certain evidence, including a vessel, its contents, and portions of video and audio recordings leading up to their arrest, did not violate due process rights). Because the Government did not act in bad faith, the Motion to Dismiss should be denied.

### B. The Body-Worn Camera Footage Was Turned Over, and the Defendant Has Not Been Prejudiced

The late production of the body-worn camera footage has also been remedied because it has already been produced to the Defendant. While in the ideal situation, it would have been discovered in the normal course of the investigation, it has now been found and produced to the Defendant. The Defendant has had it in his possession since December 3, 2021—well before the trial—and as such has the opportunity to factor its contents into his defense. Importantly, there is no evidence of intentional wrongdoing here. Supreme Court precedent is clear: a defendant must show bad faith on the part of the police to prevail on a due process claim based on the failure to preserve evidence. *See Gayle*, 608 Fed. App'x at 792.

To be clear, Detective Miller and her colleagues in the narcotics group do not wear body-worn cameras and were not wearing body-worn cameras on the day the search warrant was executed. That is because their unit conducts undercover narcotics operations involving informants. This is consistent with what is stated in her reports. Nothing was misstated and nothing has changed in that respect. The body-worn camera footage that was produced belonged to the SWAT team responsible for clearing the scene prior to the execution of the search warrant.

9

The Government was unaware that members of the SWAT team were equipped with cameras until it began prepping for trial. While the Government may not have discovered this evidence in a timely manner and its disclosure was accordingly delayed, the Defendant now has it in his possession and has not been prejudiced as a result.

### IV.  Conclusion

For the foregoing reasons, the United States respectfully requests that the Court deny the Defendant's Motion to Dismiss for Due Process Violations.

Respectfully submitted,

**JUAN ANTONIO GONZALEZ**
**UNITED STATES ATTORNEY**

By:   */s/ Yara Lorenzo Klukas*

Yara Lorenzo Klukas
Assistant United States Attorney
Florida Bar No. 73101
99 Northeast 4th Street, 6th Floor
Miami, Florida  33132
Telephone:  (305) 961-9102
Facsimile:  (305) 536-4699
E-mail:  Yara.Klukas@usdoj.gov